## 20158

TRI-SOUTH MORTGAGE INVESTORS, Appellant, v. Robert A. FOUNTAIN, III, Respondent.

(221 S. E. (2d) 861)

142

*Messrs. Barnes, Austin & Ellison,* of Columbia, *for Appellant,*

*Going & Going,* of Columbia, *for Respondent,*

Jan. 27, 1976.

RHODES, Justice:

This is an action on a guaranty agreement obligating the guarantor to payment of a promissory note secured by a real estate mortgage. Suit was instituted on the guaranty agreement by the appellant, Tri-South Mortgage Investors, against the respondent, Robert Fountain, a guarantor. A motion by Fountain to require Tri-South to join the principal obligor as a party defendant and to amend its complaint so as to seek foreclosure of the mortgage was granted by the lower court. On this appeal by Tri-South, we reverse.

Tri-South is a business trust organized under the laws of Massachusetts with its principal office in Atlanta, Georgia. Fountain is a resident of Lexington County. On July 16, 1973, Fountain and one Roy Summers obtained from Tri-South a substantial loan commitment for the purchase and development of a residential subdivision on 111 acres of land located on Lake Murray in Lexington County. The terms of the commitment required that Fountain and Summers form a partnership in which title to the land was to be taken; to execute in the name of the partnership a first mortgage covering the land to Tri-South; and to guarantee jointly and severally by separate instrument, repayment of the loan. The guaranty agreement here in issue was executed simultaneously with the execution of the note and mortgage on August 24, 1973. On the same date a comprehensive document entitled "Land and Devolpment Loan Agreement" was also executed by the parties which included, among numerous other provisions, the terms and conditions under which the loan proceeds were to be disbursed. It is undisputed that $617,303.83 of such proceeds had been disbursed by Tri-South to Fountain and Summers Associates, the partnership, at the time this suit was commenced.

The partnership defaulted in June 1974, and on October 25, 1974, Tri-South brought this action against Fountain under the guaranty agreement for the above stated amount advanced the partnership. Neither the partnership nor Summers was named as a defendant.

The lower court held that the guaranty agreement expressly incorporated the note, mortgage, and the Land and Development Loan Agreement, and was not a simple guaranty of payment. It further held that the other loan documents were so "entwined" with the guaranty agreement that joinder of the partnership and foreclosure of the mortgage were required.

The extent to which a creditor must pursue the primary obligor or his security depends principally upon the terms of the guaranty agreement. 38 Am. Jur. (2d), Guaranty, § 108 (1968). Although reference is made in the guaranty agreement to the note and other loan documents, we do not feel that such is sufficient to destroy the obvious intent of the parties that the guaranty agreement be absolute as a guaranty of payment rather than a guaranty of collection. In the case of *Georgian Co. v. Britton,* 141 S. C. 136, 139 S. E. 217 (1927), we find the following quotation:

"But let us, for their benefit, denominate them as guarantors, at the same time, in order that justice may be obtained in our decision, keeping in mind that there are two kinds of guaranties, to wit, absolute guaranty, or guaranty of payment, and guaranty of collection. In 28 *Corpus Juris,* at page 395, it is said:

'A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor.'

\* \* \*

"The guaranty of the defendants herein being absolute, it is well settled by the authorities of this state [cases cited] that they are liable to suit without first suing the principal

debtor." *Accord, Smith v. Mandel,* 66 F. R. D. 405 (D.C.-S.C. 1975).

The criteria contained in the provisions of the Uniform Commercial Code relating to the negotiability of instruments are by analogy applicable to the construction of the guaranty agreement. S. C. Code § 10.3-105 (1962) provides that:

"(1) A promise or order otherwise unconditional is not made conditional by the fact that the instrument

"(b) states its consideration . . . which gave rise to the instrument, or that the promise or order is made or the instrument matures in accordance with or 'as per' such transaction; or

"(c) . . . refers to a separate agreement for rights as to prepayement or acceleration; or

\* \* \*

"(e) states that it is secured, whether by mortgage, reservation of title or otherwise; or

"(f) indicates a particular account to be debited or any other fund or source from which reimbursement is expected; . . ."

We quote the following from the guaranty agreement:

"This is a guaranty of payment and not of collection. The liability of the undersigned on this guaranty shall be direct and immediate and not conditioned or contingent upon the pursuit of any remedies against the Borrower or any other person, nor against securities or liens available to Lender, its successors, endorsees or assigns. The undersigned waives any right to require that an action be brought against the Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of the Borrower or any other person."

In view of the unambiguous language of the guaranty agreement providing that it was a guaranty of payment and not of collection, it is evident that the intent of the parties was to refer to the loan documents for information only, and that there was no intent to incorporate the documents by reference and thereby condition the guaranty agreement upon said documents. It is also clear from the express language of the guaranty agreement that Tri-South was not required to foreclose its mortgage over the real estate owned by the partnership simultaneously with, or as a condition precedent to, a direct suit against Fountain under the guaranty agreement. The contrary conclusions by the lower court were in error.

The lower court further found as a basis for its ruling that the waiver by the guarantors of any right to require that Tri-South first resort to the mortgage, as expressed in the above-quoted language of the guaranty agreement, was void in that it constituted an attempt to circumvent the public policy of this State as set forth in S. C. Code §§ 45-88 through 45-96 (1962). These statutes were enacted by the Legislature during the economic depression years of the early 1930's. They provide a method by which a mortgagor can have the real estate involved in a foreclosure appraised at the fair value, which appraisal figure shall be then used as the basis for computing the deficiency judgment rather than the highest price bid at a judicial sale. The procedure under the appraisal statutes is qualified in its application to "any real estate foreclosure proceeding." S. C. Code § 45-88 (1962). The following statement from 17 Am. Jur. (2d), Contracts, § 173 (1964), states the general law relative to the contractual waiver of rights as affected by public policy:

"Generally, parties may agree to waive statutory rights unless a question of public policy is involved. An agreement is not necessarily against public policy because it waives a constitutional or statutory right or changes an established rule of law. Whether the effect of any specific statute can be

avoided by agreement depends upon whether the statute is one enacted for the protection of the public generally or whether it is designed solely for the protection of the rights of individuals, in which case it may be waived." p. 531.

The provisions of § 45-88 through § 45-96 are clearly for the benefit of a party against whom a deficiency judgment is sought in a foreclosure proceeding and may, therefore, be waived. That the Legislature did not intend to extend the appraisal provisions beyond the specific limits of the statute is evidenced by § 45-96.1, which provides that the remedies afforded by the statute are waived if no petition for an order of appraisal is filed within the time prescribed. If its provisions are waived by failure to file a timely petition, it is illogical to conclude that the statute creates a policy designed for the public generally. We are of the opinion that the waiver by Fountain was valid, and the finding by the lower court that it was void as an attempt to subvert the public policy of this State was erroneous.

Fountain urges that the joinder by the lower court was a valid exercise of the discretionary powers granted it under the statutes allowing the joinder of necessary or proper parties to an action. S. C. Code §§ 10-203 and 10-219 (1962). The joinder by the lower court was premised on an erroneous construction of the guaranty agreement and its legal effectiveness. We have found that the guaranty agreement was valid and that it granted to Tri-South the election of suing Fountain alone. The order of the lower court requiring that the partnership be joined and foreclosure instituted would effectively nullify the election which Fountain granted Tri-South in the guaranty agreement. *See Doctor v. Lee, Inc.,* 215 S. C. 332, 55 S. E. (2d) 68 (1949). The ruling by the lower court had the effect of rewriting the agreement of the parties and, as such, constituted an abuse of discretion.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.