In the Matter of Donald D. BOWERS, Alleged Debtor.

Bankruptcy No. 2–81–00314.

United States Bankruptcy Court, D. Connecticut.

Dec. 30, 1981.

Martin Chorches, and Donald MacKie, West Hartford, Conn., for alleged debtor.

Joel N. Sable, of Berman & Sable, Hartford, Conn., for Hartford Nat. Bank.

Michael S. Schenker, Hartford, Conn., and Ronald Abramson, New York City, for U. S. Pioneer Electronics Corp.

Thomas Gugliotti, of Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for United Bank and Trust Co.

Thomas J. Shortell, Hartford, Conn., for H. H. Scott, Inc.

## MEMORANDUM AND DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

This proceeding raises as its main issue the circumstances under which creditors may be disqualified as petitioners in an involuntary chapter 7 petition.

## BACKGROUND

An involuntary petition was initiated against Donald D. Bowers (Bowers), a resident of Burlington, Connecticut, on March 3, 1981, by three creditors, Hartford National Bank and Trust Co. (HNB), United Bank and Trust Co. (UBT), both located in Hartford, Connecticut, and H. H. Scott, Inc. (Scott), located in Wilburn, Mass.[1] The petition alleged that HNB is the holder of a promissory note in the amount of $92,499.00 executed by Tunxis Corporation (Tunxis),[2] that UBT is the holder of four Tunxis promissory notes and one installment loan contract totalling $142,609.16 and that Scott is owed $133,261.62 on open account by Tunxis. All of these obligations are stated to be endorsed or personally guaranteed by Bowers. The petition claims that Bowers is generally not paying his debts as such debts become due and prays that the court enter an order for relief against him pursuant to 11 U.S.C. § 303.[3]

Bowers moved to dismiss the involuntary petition on the grounds that the petitioners are holders of "extraordinary" debt instruments and he has been paying his "ordinary" debts as they become due, that Scott does not qualify as a petitioning creditor because its claim is contingent as to liabili-

1. 11 U.S.C. § 303(b)(1) provides that

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims....

2. Tunxis, a retail stereo and audio equipment dealer, is presently in a chapter 11 proceeding

in this court having filed its voluntary petition on July 21, 1980. Bowers is either the principal or sole stockholder of Tunxis and executed the petition as its president.

3. *11 U.S.C. § 303. Involuntary cases.*

(h) [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
(1) The debtor is generally not paying such debtor's debts as such debts become due
. . . .

ty, and that UBT is fully secured. Thereafter, pursuant to 11 U.S.C. § 303(c) and Bankruptcy Rule 104(e),[4] U. S. Pioneer Electronics Corp. (Pioneer) located in Moonachie, New Jersey intervened as a petitioning creditor, claiming that Bowers had guaranteed the payment of defaulted Tunxis notes with a balance due of $91,000.00.

In his answer and special defenses to the amended involuntary petition, Bowers repeated the allegations in his motion to dismiss and further claimed that Scott and Pioneer lack standing to be petitioners because of their failure to register with the Connecticut Secretary of State as foreign corporations transacting business in Connecticut pursuant to Conn.Gen.Stat. § 33–396 (1980).[5] Hearings on the involuntary petition and the motion to dismiss were held on July 2, 1981 and August 12, 1981, and post-hearing briefs have been submitted.

## DISCUSSION

A. *Whether Scott has a claim contingent as to liability.*

Bowers admits that Tunxis owes Scott over $110,000.00 for equipment purchases and that he signed a guaranty agreement (guaranty) with Scott on February 20, 1980, which provided that he would pay the amounts due Scott arising out of sales of Scott products to Tunxis. He argues that Scott's claim is contingent as to liability, because of a provision in the guaranty, thereby disqualifying Scott from being a petitioning creditor. The guaranty in paragraph 9(c) requires Scott to obtain a judgment against Tunxis before Scott can proceed against Bowers as guarantor.[6] Since Scott does not claim that it has received a judgment against Tunxis, Bowers contends that Scott's claim against him remains contingent as to liability. In the schedules of debts filed by Tunxis in its bankruptcy case, Scott is listed as an unsecured creditor in the amount of $109,753.68 and the debt is not claimed to be disputed, contingent or unliquidated.

A contingent claim is one where liability attaches upon the occurrence of a future event. *In re Duty Free Shops Corp.*, 6 B.R. 38, 39 (Bkrtcy., S.D.Fla.1980). Claims which are disputed as to amount are not contingent. *Id.* at 39; *In re All Media Properties, Inc.*, 5 B.R. 126, 131–32, 6 B.C.D. 586, 587–88 (Bkrtcy., S.D.Tex.1980). The Bankruptcy Act of 1898 (Act) in § 59(b) required that petitioning creditors in involuntary petitions have "provable claims not

---

**4.** 11 U.S.C. § 303(c). After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent . . . may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

The language of Bankruptcy Rule 104(e) is virtually identical to § 303(c).

**5.** *Conn.Gen.Stat. § 33–396. Authority to Transact Business.*

(a) No foreign corporation except an insurance or surety or indemnity company shall transact business in this state until it has procured a certificate of authority so to do from the secretary of state.

(b) A foreign corporation shall not be denied a certificate of authority by reason of the fact that the laws of the state under which it is organized governing its organization and internal affairs differ from the laws of this state.

**6.** Paragraph 9(c) of the guarantee reads as follows:

Should H. H. Scott, Inc. seek to enforce this guarantee against the guarantor H. J. Scott (sic) shall not be entitled to Attorney's fees or any judgment obtained unless they have first proceeded against the obligor and have obtained a judgment against the obligor for the amount claimed against the guarantor, unless the obligor has met any of the criteria of Paragraph 7 above.

Paragraph 7 states:

Nothing herein contained shall be construed as an obligation on your part to sell goods or extend credit to the OBLIGOR, or as an obligation to continue to sell goods or extend credit. Your records showing the account between you and the OBLIGOR shall be admissable in evidence in any action or proceeding involving this guaranty, and such records shall be prima facie proof of the items therein set forth. This guaranty shall for all purposes be deemed to be made in, and shall be governed by the laws of the State of Connecticut.

contingent as to liability." From 1952 to 1962, § 59(b) read slightly differently and required that petitioning creditors have "provable claims liquidated as to amount and not contingent as to liability." In a case arising under that earlier section, the court distinguished between *contingent* and *conditional* claims and held that "[t]he fact that the payment of a note may be conditional does not mean that the liability for that payment is contingent." *In re Trimble Co.*, 339 F.2d 838, 844 (3rd Cir. 1964). In *Trimble*, the petitioning creditors held notes due from the alleged debtor corporation which could not be enforced because the corporation was insolvent and the notes represented stock redemptions. Under state law such notes could not be paid until the corporation had a sufficient earned surplus. The alleged debtor claimed that these claims were therefore contingent. The *Trimble* court concluded that the requirement of an earned surplus was a condition of payment only and that the petitioning creditors did not hold claims that were contingent as to liability. I believe the same analysis is appropriate in this proceeding and that the requirement of a judgment against Tunxis, like the requirement of an earned surplus, is a condition of payment only. Furthermore, when Tunxis filed its chapter 11 petition and listed Scott's debt as liquidated, noncontingent and undisputed, the requirement that Scott first obtain a judgment against Tunxis before seeking payment from Bowers became useless.[7] I conclude that Scott's claim against Bowers is not contingent as to liability.

B.  *Whether failure to obtain a certificate of authority disqualifies Scott and Pioneer.*

Bowers next contends that both Scott and Pioneer lack standing as petitioners because they were foreign corporations doing business in Connecticut and admittedly have not obtained a certificate of authority from the Secretary of State pursuant to Conn.Gen.Stat. § 33–396 (1980).[8] The penalty for transacting business without first obtaining such a certificate includes not being "permitted to maintain any action, suit, or proceeding in any court of this state." *Id.* § 33–412(a).

In his brief, Bowers cites cases which stand for the proposition that federal courts sitting in diversity of citizenship cases must apply the substantive law of the state in which they sit. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Armor Bronze & Silver Co. v. Chittick*, 221 F.Supp. 505 (D.Conn.1963). He then says that since Scott and Pioneer failed to obtain a certificate of authority according to state law and would be unable to maintain an action in state court, they should be barred from bringing an involuntary petition in a bankruptcy court. Scott and Pioneer contend that noncompliance with § 33–396 is immaterial since that statute cannot bar a foreign corporation from maintaining an action in a federal court based on federal law.

■ Although no published opinions appear to have dealt with this specific issue under the Bankruptcy Reform Act, there is authority that a failure to qualify as a foreign corporation conducting intrastate business does not impair a creditor's ability to exercise the rights of a petitioning creditor under chapter X of the former law. *In re Diversified Development Corp.*, 341 F.2d 58, 59 (7th Cir. 1965). *See also In re Leeds Homes, Inc.*, 332 F.2d 648, 650 (6th Cir. 1964); *In re V–I–D, Inc.*, 198 F.2d 392 (7th

---

7.  The situation is akin to that contemplated by Conn.Gen.Stat. § 42a–3–416(2) (1980) dealing with guarantees of collection of commercial paper. It provides that

"Collection guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, or *after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him.* (emphasis added)

8.  *See* note 5 *supra.*

Cir. 1952), *cert. denied, Kelley, Glover & Vale v. Kramer*, 344 U.S. 914, 73 S.Ct. 337, 97 L.Ed. 705 (1953). The rationale is that while a federal court sitting in diversity cases must act like a state court, *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); *Trane Co. v. Trane Manufacturing, Inc.*, 190 F.Supp. 443, 444 (D.Conn.1960), a bankruptcy court does not sit as if it were only another state court when it considers who may be petitioning creditors. Rather, bankruptcy courts are created pursuant to Art. 1, § 8 of the U. S. Constitution as federal courts to take original and exclusive jurisdiction of bankruptcy cases. Provisions for the qualifications of those filing cases and claims in the bankruptcy court are governed by federal legislation. State law is utilized only to determine if the creditor holds a claim, not how and what claims shall be allowed. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). The *Diversified* case noted that while the Illinois doorclosing statute rendered a claim unenforceable in state courts, such claims are not void. 341 F.2d at 60. The same is true under the Connecticut statute.[9] Based on this authority, I hold that Pioneer and Scott are not disqualified as petitioning creditors in this proceeding because of their failure to obtain a certificate of authority.[10]

### C. Whether United Bank is a fully secured creditor.

■ Bowers avers that UBT is fully secured and therefore lacks standing as a petitioner because a UBT note signed by him and his wife, Florence Bowers (Florence), in the sum of $49,000.00 is fully secured by a second mortgage on real property owned by Florence.[11] In addition to this note, Bowers guaranteed four other notes which he argues are adequately secured by the proceeds of the liquidation of Tunxis's assets and various attachments UBT obtained against Bowers' property.[12]

Bowers' argument as to UBT's fully secured status fails. The bulk of the property presently securing the notes in question belongs to Tunxis or Florence rather than to Bowers. Section 303(b)(1) provides that an involuntary case is commenced only if claims held by three or more petitioning creditors aggregate at least $5,000.00 more than the value of any lien on property of *the debtor* securing such claims held by the petitioners. Bowers does not claim that if only his property is taken into account that UBT is fully secured. The statute contains no provision for taking into account the property of third persons in determining

---

**9.** *Conn.Gen.Stat. § 33–412(b).*

The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation . . . .

**10.** None of the parties has argued or briefed the effect of 11 U.S.C. § 502(b)(1). That section deals with the *allowance* of claims and provides that

(b) [i]f . . . objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

The legislative history of this section states "[p]aragraph (1) requires disallowance if the claim is unenforceable against the debtor for

any reason (such as usury, unconscionability, or failure of consideration) other than because it is contingent or unmatured." H. Report No. 95–595, 95th Cong., 1st Sess. 352–54 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 62–65 (1978), U.S.Code Cong. & Admin.News 1978, 5787. The legislative history is silent as to what effect a failure to register has on a claim of a foreign creditor. I must assume that Congress was aware of the cases on this issue decided under the Bankruptcy Act of 1898, and without a clearer indication that § 502(b)(1) was intended to overrule these cases, I believe that § 502(b)(1) does not affect the conclusions reached herein.

**11.** "A creditor who is fully secured obviously may not join in the petition." 3 *Collier on Bankruptcy* 601, ¶ 59.14[3] (14th ed. 1977).

**12.** The proceeds of the Tunxis liquidation are presently the subject of a proceeding in this court to determine priority of distribution.

whether a creditor is secured.[13] UBT, therefore, has standing to bring the present involuntary petition against the debtor.

### D. *HNB's alleged bad faith.*

Bowers alleges that because HNB acted in bad faith in regard to certain loan transactions it should be disqualified from being a petitioning creditor. It appears that Bowers owed HNB $132,499.00 based upon two demand notes signed April 23, 1980. One note for $92,449.00 consolidated two notes previously executed by Tunxis which had become overdue and were renegotiated by the parties. On that same date Bowers and his wife executed another note in the amount of $40,000.00. This note was based on a prior note executed on October 4, 1978 for $50,000.00 by Bowers and his wife. The proceeds of the October 4, 1978 note were used to purchase a new home. This loan was to be repaid with the proceeds from the sale of the existing home. Due to problems with the new home, Bowers and his wife were unable to pay the October 4, 1978 loan in August of 1979 when the old home was sold. In December of 1979, a $10,000.00 payment on the loan was made. HNB requested that Florence, the sole titleholder of the newly-purchased home, execute a mortgage in its favor for the $40,000.00 due. This was done on April 23, 1980, when the note was signed. HNB then made demand upon Bowers for full payment of all debts owed it on May 1, 1980. Bowers claims that HNB demanded payment of the notes seven days after they were signed in an attempt to pressure him to give HNB "a preferred position vis-a-vis the other creditors." Bowers' Trial Memorandum at 20. HNB contends that it made demand only after it discovered that Bowers had misrepresented the status and amount of prior mortgages on the home owned by Florence. Suit on these notes was commenced by HNB on August 21, 1980.

Based upon the testimony concerning the transactions between the parties, I do not find that HNB's actions prevent it from being a petitioning creditor. The notes were knowingly signed as demand notes and Bowers' contention that HNB thereafter was precluded from making demand is unsustainable. Bowers has not demonstrated that HNB acted in bad faith. HNB is not disqualified as a petitioning creditor.

### E. *Whether Bowers was generally not paying his debts as they became due.*

In his filed list of creditors Bowers sets forth twenty-three creditors with claims ranging from $7.64 to $73,891.06. No amounts were listed for the claims of Scott, Pioneer and UBT. In determining whether a debtor is generally not paying such debtor's debts as such debts become due, an examination of the debtor's payment practices in general, including the number of debts past due, their type, and their amount, is appropriate. In *All Media, supra,* the court concluded that

> [g]enerally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation. Where the debtor has few creditors the number which will be significant will be fewer than where the debtor has a large number of creditors. Also, the amount of the debts not being paid is important. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper.

5 B.R. at 143, 6 B.C.D. at 594. *See also In re Win-Sum Sports, Inc.,* 14 B.R. 389 (Bkrtcy., D.Conn.1981).

Although Bowers has twenty-three creditors, the four petitioning creditors here hold claims against him which constitute over

---

**13.** Under the comparable provisions of the Bankruptcy Act of 1898 where the petitioning creditors had to have claims "amounting in the aggregate to $500 in excess of the value of any securities held by them", the courts uniformly held that a creditor holding a security that is not property of the debtor is *not* a secured creditor. *See generally* 1 Collier on Bankruptcy 130.22, ¶ 1.28; 3 *id.* 164, ¶ 57.07[2] & 601, ¶ 59.14[3] (14th ed. 1977).

90% of his total indebtedness. In view of the number and amount of debts, I conclude that Bowers is generally not paying his debts as such debts become due. I find no merit to the Bower's argument that he is generally paying his ordinary debts as they fall due and is only delinquent in regard to "extraordinary" debts. Bowers fails to cite any decisional law or provisions of the Bankruptcy Reform Act in support of this distinction between ordinary and extraordinary debts.

## CONCLUSION

In view of the foregoing, I conclude that UBT, HNB, Scott and Pioneer are holders of claims not contingent as to liability which aggregate at least $5,000.00 more than the value of any liens on property of Bowers securing such claims, and that Bowers is a person who may be a debtor under chapter 7 and is generally not paying his debts as they become due. There is no need to reach other issues raised by the parties. An order for relief pursuant to U.S.C. § 303(h)(1) shall enter.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.