0719

ROCK HILL NATIONAL BANK, Respondent v. James L. HONEYCUTT,
James L. Honeycutt as Executor for the Estate of Sue D. Honeycutt,
deceased, and Home Federal Savings & Loan Association, Defendants,
of whom James L. Honeycutt, James L. Honeycutt as Executor for the
Estate of Sue D. Honeycutt, deceased are Appellants.

(344 S. E. (2d) 875)

Court of Appeals

*Bean & Bean,* Spartanburg, *for appellants.*

*Spencer & Spencer,* Rock Hill, *for respondent.*

Heard March 26, 1986.

Decided May 19, 1986.

CURETON, Judge:

James L. Honeycutt, individually and as executor of his wife's, Sue D. Honeycutt, estate (Honeycutts), is the surviving guarantor of a note executed by the Honeycutts' wholly owned corporation and secured by real estate personally

owned by the Honeycutts. The trial judge rendered a fore-closure decree against the Honeycutts' property after the corporation's debts had been discharged in bankruptcy. The Honeycutts appeal. We affirm.

The Honeycutts were sole shareholders of Mac-Fab, Inc. In 1976 Mac-Fab borrowed Seventy-eight Thousand, Four Hundred Thrity-three Dollars and Seventy-five Cents ($78,433.75) from Rock Hill National Bank. The Honeycutts personally guaranteed the note and secured it with a second mortgage on their personal properties, including their home. The note was renewed in 1977 for Sixty-three Thousand, Four Hundred Eighty-three Dollars and Nine Cents ($63,483.09) with the guarantee from the first note being extended to the renewed note. Mac-Fab also owed the bank a substantial additional indebtedness that was partially secured.

In October 1977 Mac-Fab filed for bankruptcy under provisions of Chapter Eleven of the Bankruptcy Act.[1] At that time the sums owed by Mac-Fab to the bank exceeded the collateral pledged by Mac-Fab for the debt and thus the bank filed its claim in bankruptcy partly as a secured claim and partly as an unsecured claim. The Bankruptcy Court ruled that the portion of the indebtedness not satisfied by collateral owned by the corporation was unsecured although the amount was also secured by the guarantee and mortgage executed by the Honeycutts to the bank.

In the bankruptcy proceeding, Honeycutt presented a "plan of arrangement" for Mac-Fab. He proposed to sell the corporation to a buyer he had located. According to Honeycutt, a majority of the corporation's unsecured[2] creditors approved the plan until the bank cast its vote against the plan. The bank's negative vote forced Mac-Fab into involuntary liquidation under Chapter Seven of the Bankruptcy Act. Upon liquidation, the bank received only Twenty-two Thousand, Two Hundred Thirty-two Dollars ($22,232.00) leaving Forty-one Thousand, Two Hundred Fifty Dollars (41,250.00) of the renewal note unsatisfied. This foreclosure

---

[1] This chapter is commonly known as the business reorganization chapter of the Bankruptcy Act.

[2] Under the Bankruptcy Act only unsecured creditors could vote on the plan of reorganization.

action is aimed at collecting the unsatisfied balance. After a reference, the trial court ordered foreclosure. Honeycutt appeals individually and as executor of his wife's estate.

In this appeal Honeycutt claims: (1) that by participating in the corporation's bankruptcy proceedings as an unsecured creditor, the bank waived its right to subject the security pledged by the Honeycutts to payment of its debt; (2) that the bank does not come into court with clean hands; and (3) that the bank created the situation it now finds itself in because if it had voted for the plan of reorganization all debts of the corporation would have been paid in full. We deal with these contentions seriatim.

The Honeycutts' primary contention is that because the bank participated in the Chapter XI arrangement, it is precluded from asserting its claim against them as guarantors for the unpaid balance due on the renewal note. Their argument is that by electing to participate as an unsecured creditor the bank effectively waived the security afforded by the Honeycutts' mortgage. They further argue that the bank was required to have exhausted its "security" before proceeding in bankruptcy as an unsecured creditor so as to make more funds available for all unsecured creditors. Because we think the trial judge's order correctly treated this argument, we print the pertinent portion of his order with our modifications as the opinion of this court.

> As to the first contention, the cases reveal that a creditor does not lose his guaranty claim by filing a claim against the principal debtor or accepting a discharge payment from the bankrupt estate. *Eads Hide & Wool Co. v. Merrill*, 252 F. (2d) 80 (10th Cir. 1958). In *Union Carbide Corp. v. Newboles*, 686 F. (2d) 593 (7th Cir. 1982), Union Carbide attempted to collect the balance owed on a corporate note of a bankrupt debtor corporation from the guarantors of that note. The guarantors argued that Union Carbide's approval of the plan or arrangement and acceptance of a discharge payment from the bankrupt estate released them from any liability under the contract of guaranty. In response to this argument, the court stated:

Section 16 makes clear that the discharge of New-Kro (the debtor) had no effect on the liability of Mr. and Mrs. Newboles on the note, and indeed we have held that the bankruptcy court has no power to discharge the liabilities of a bankrupt's guarantor [citations omitted]. We hold that a creditor's approval of the bankruptcy plan does not discharge the bankrupt's guarantors either. 686 F. (2d) at 595.

In *R.I.D.C. Industrial Development Fund v. Snyder,* 539 F. (2d) 487 (5th Cir. 1976), it was held that a creditor's voluntary participation in Chapter XI arrangement had no effect on the responsibility of the debtor's guarantors to pay the unsatisfied portion of the guaranteed debts that remain after the arrangement has been completed. Hence, mere submission of a proof of claim and voting against a plan of arrangement does not estop [the bank] from suing the Honeycutts on their guaranty.

Moreover, secured or unsecured status in a bankruptcy refers to whether or not the creditor has an interest in property of the bankrupt estate. A creditor's interest in the property of a third party does not make such creditor secured within the bankruptcy because the trustee has no right to sell or transfer property which does not belong to the bankrupt estate. As the court indicated in *Matter of Bowers,* 16 B. R. 298 (Bkrtcy. D. Conn. 1981), the old Act defined the word "secured" in this manner:

> Under the comparable provisions of the Bankruptcy Act of 1898 where the petitioning creditors had to have claims "amounting in the aggregate of $500.00 in excess of the value of any securities held by them," the courts uniformly held that a creditor holding a security that is not the property of the debtor is not a secured creditor. 16 B. R. at 303.

The proof of claim filed by [respondent] within the bankruptcy [proceeding] included loans other than the one at issue here. Some of the other loans were secured by property of the bankrupt estate. The Trustee disposed of that property in favor of [respondent]. Since the value of that property did not satisfy the entire claim of [Respondent] against Mac-Fab, Inc., the unsatisfied balance

was treated as unsecured by the Bankruptcy Court. This treatment by the Court was in accordance with bankruptcy law, which classifies that portion of a claim in excess of the value of the collateral as unsecured. 11 U. S. C. Sec. 506 (1978); Bankruptcy Rule 306(d) (repealed effective October 1, 1979). There is no evidence that [respondent] ever represented to the Bankruptcy Court that it was foregoing its guaranty claim against the Honeycutts. The Order for Allowance of Claim signed by the Bankruptcy Court dealt only with [respondent's] claim to property of the bankrupt estate, and did not and could not determine the interest of [respondent] in the personal residence of the Honeycutts. For that reason, [we hold] that [respondent] did not waive its right to foreclose on the mortgage granted to it by [appellants] Honeycutt[s].

■ Since Mac-Fab, Inc. filed its petition in bankruptcy on October 18, 1977, the Bankruptcy Act governed that proceeding, not the Bankruptcy Code. 11 U. S. C. Sec. 101 *et seq.*, (1978); R. Geoffrey Levy, *Bankruptcy Procedure in the District of South Carolina*, 2(1983). Section 16 of the Act provided:

> The liability of a person who is a codebtor with or guarantor in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt 11 U. S. C. Sec. 34 (repealed effective October 1, 1979).

■ The Bankruptcy Code has essentially re-codified Section 16 of the [Bankruptcy] Act as 11 U. S. C. Sec. 524 (1978). The cases interpreting Section 16 hold that a discharge in bankruptcy is personal to the bankrupt debtor. It does not affect the liability of a guarantor on the debt of a bankrupt debtor. *United States v. Midwest Livestock Producers Cooperative*, 493 F. Supp. 1001, 1002 (E. D. Wis. 1980). South Carolina also adheres to this rule. In *Dominion Culvert & Metal Corp. v. U. S. Fidelity & Guaranty Corp.*, 238 S. C. 452, 120 S. E. (2d) 518 (1961), Justice Lewis, writing for the majority, said:

> A discharge in bankruptcy is personal to the bankrupt and, under the express provision of the foregoing section of the Bankruptcy Act, does not generally cancel, release, or impair the liability of a surety or a person

> jointly liable for debt. The creditor may prove his claim against the bankrupt and recover the balance remaining from the surety. 238 S. C. at 460, 120 S. E. (2d) at 522.

This statement of the law has recently been affirmed in *Bell v. Forest Paschal Machinery Co. & Engineering Associates, Inc.*, 277 S. C. 19, 282 S. E. (2d) 232, 234 (1981). So the contract of guaranty signed by the Honeycutts amounted to an obligation separate and distinct from that of Mac-Fab, Inc. When the principal, Mac-Fab, Inc., defaulted under the renewal note, the Honeycutts became principally liable to [the bank] by virtue of the guaranty note. The bankruptcy of Mac-Fab, Inc. protected that corporation from any suit on the renewal note by [the Bank], but did not relieve the Honeycutts from liability under the guaranty note by the Chapter-XI arrangement of Mac-Fab, Inc.

The Honeycutts next contend that the trial court should have barred the bank's recovery against them based on the equitable "clean hands" doctrine. They assert that it would be unconscionable for the bank to participate in the pro rata distribution of the bankrupt estate then be permitted to proceed against its mortgage security under its guaranty arrangement with the Honeycutts. The Honeycutts concede that this theory of defense was not pled in their answer nor raised in any way before the special referee. We note also that while the parties concede that the issue of clean hands was raised in exceptions to the referee's report, the exceptions have not been made a part of the record on appeal.

We agree with the trial judge that because the "clean hands doctrine" was not raised in the pleadings, it should have at least been presented to and considered by the referee and should not be raised for the first time in an appeal from the referee's decision to the circuit court. Section 15-31-100 Code of Laws of South Carolina, 1976 (repealed by Act 100, July 1985) makes it clear that review by the circuit court of a referee's decision is an appellate review.[3] Thus a theory of recovery or defense not presented to the master is

---

[3] The section provides that the referee's "decision must be given and may be excepted to and reviewed in like manner and with like effect in all respects as in cases of appeal under Sections 15-35-120 and 15-35-130."

not properly before the circuit court in an appeal of the referee's decision to that court. *Dalton v. Town Council of Mt. Pleasant,* 241 S. C. 546, 129 S. E. (2d) 523, 527 (1963); *White v. Livingston,* 231 S. C. 301, 98 S. E. (2d) 534 (1957) (one cannot present and try his case on one theory and thereafter advocate another theory on appeal.)

Even if we were to hold that consideration of the doctrine of clean hands could be raised before the circuit court on appeal, we find no evidence in the record that the bank has engaged in inequitable conduct in its efforts to recoup a portion of its losses from the Honeycutts. The Honeycutts argue that it is unfair to other unsecured creditors to permit the bank to recover a portion of its losses as an unsecured creditor and also recover an additional sum against its secured guarantors. We disagree, but even if we were to agree with their argument, we fail to see how the Honeycutts have standing to raise this issue. *See Duke Power Co. v. S. C. Public Service Commission,* 284 S. C. 81, 326 S. E. (2d) 395, 404 (1985) (in order to have standing to present a case before the courts of this state, a party must have a personal stake in the subject matter of the lawsuit.)

Finally, the Honeycutts argue that the bank should be precluded from enforcing its guaranty because it voted against a proposed plan of arrangement which they claim would have paid all creditors in full and eliminated the necessity for enforcing the guaranty. We initially note that aside from Honeycutt's bare assertion that the plan would have passed had the bank not voted against it, there is nothing else in the record concerning the plan. The record is totally devoid of any evidence concerning feasibility of the proposed plan. We perceive no hint of arbitrariness on the part of the bank in voting against the plan of reorganization. As we see it, the bank simply exercised the discretion granted it under the Bankruptcy Act and Bankruptcy Rules in voting against the plan. Moreover, it defies logic that the bank would vote against a "sure plan" which would have paid in full its indebtedness.

Having reviewed all of the Honeycutts' contentions, we find no reversible error. The order of the trial court is

Affirmed.

SHAW and GOOLSBY, JJ., concur.