**WAINWRIGHT BANK & TRUST COMPANY, Appellant (Plaintiff Below),**

v.

**PAC REALTY CORPORATION a/k/a Pac Realty, Inc. of Indiana, Inc., and Indiana Mortgage Company, Appellees (Defendants Below).**

No. 49A02–8609–CV–334.

Court of Appeals of Indiana, Second District.

Oct. 7, 1987.

Jack G. Hittle, Church, Roberts & Beerbower, Noblesville, for appellant.

Louis F. Cohen, Irwin B. Levin, Teresa E. Dearing, Cohen, Malad & Hahn, Indianapolis, for appellees.

SULLIVAN, Judge.

Wainwright Bank & Trust Company (Bank) appeals the trial court's decision finding PAC Realty Corporation (Realty) not liable on its guaranty.

We reverse.

In February, 1983, PAC Financial Corporation (Financial) renewed a prior obligation to the Bank by the execution of a promissory note. This note was guaranteed by Realty, the wholly owned subsidiary of Financial. Financial defaulted on its note and on October 7, 1983, Financial sought protection under Chapter 11 of the Bankruptcy Code. Realty did not file bankruptcy.

In August, 1985, a disclosure statement and plan of reorganization were distributed to creditors of Financial and Realty. The plan provided for the merger of Financial and Realty following approval of the plan. Under the plan, the Bank, as an unsecured creditor of Financial, was to receive one share of stock in the newly formed company for each three dollars owed by Financial to the Bank. The Bank voted to reject this plan on September 12, 1985; however, the rejection was not timely. On September 13, 1985, the Bank filed suit against Realty on the guaranty and on September 18, 1985, Financial's plan of reorganization was confirmed. Financial and Realty merged to form PAC Financial Corporation on September 19, 1985.

Realty argued in the trial court that the bankruptcy and plan of reorganization of Financial relieved Realty of its liability on the guaranty. The Bank argues on appeal that the obligation of Realty as a separate corporate entity was not affected by Financial's bankruptcy proceedings.

Section 524(e) of the Bankruptcy Code provides in pertinent part as follows:

"[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

This provision clearly indicates that Realty is still liable on its guaranty. However, Realty argues that because the reorganization plan called for Realty to merge with Financial and because the Bank did not object to the plan, the Bank should not be allowed to reach assets of the newly-formed corporation. In effect, Realty contends that the Bank's failure to object to the plan constitutes an acceptance of the plan's provisions as the only means of repayment of Financial's debt.[1] Realty's argument, though appealing, does not overcome the clear mandate of § 524(e). Additionally, the bankruptcy process would be hindered by requiring creditors to object to reorganization plans in order to protect their rights of action against solvent third parties. Section 509(a) of the Bankruptcy Code contemplates the possibility of actions by creditors against third parties by providing in pertinent part:

> "[A]n entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a).

Our holding that Realty is liable upon its guaranty despite Financial's discharge in bankruptcy is further buttressed by the opinion of the Seventh Circuit of the United States Court of Appeals in *Union Carbide Corp. v. Newboles* (1982) 7th Cir., 686 F.2d 593. In that case, the debtor company gave Union Carbide a promissory note in exchange for a loan. The note was personally guaranteed by the debtor corporation's president and his wife. The debtor company's plan for settlement of its unsecured debt was approved by Union Carbide and contained the following provision:

> "Acceptance and confirmation of this Arrangement shall constitute a full settlement, satisfaction and discharge of all claims, demands, actions, causes of action or otherwise against not only the Debtor, but also against any other persons or entities who have entered into guaranty or indemnity agreements with

unsecured creditors or who have endorsed commercial paper for the benefit of the Debtor. It is the intent of this Arrangement that upon its acceptance and confirmation, any creditors asserting claims arising out of agreements against persons or entities other than the Debtor by reason of indebtedness of the Debtor, shall be required to look solely to the Debtor for payment of such indebtedness under the terms of this Arrangement." *Id.* at 594.

Union Carbide accepted payment under the plan, then brought action against the guarantors for the remainder of the debt. The court held that Section 16 of the Bankruptcy Act, the predecessor of § 524(e), made clear that the discharge of the debtor company had no effect upon the liability of the guarantors, notwithstanding the specific provision within the plan.

> "A bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors. A creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings, simply because the gamesmanship imported from state contract law into the bankruptcy proceedings would be intolerable. Since a majority of the creditors must approve the debtor's plan for the debtor to be discharged, in many instances one creditor's approval or disapproval will have no effect even in the bankruptcy proceeding. In the case that a single creditor's vote is determinative, imputing extra-bankruptcy significance to it for that reason violates the specific command of Section 16 that '[t]he liability of a ... guarantor ... shall not be altered by the discharge of [the] bankrupt.' This case is no different because the plan expressly purports to discharge guarantors of the bankrupt. The import of Section 16 is that the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract

1. Although there are res judicata elements of Realty's argument, we do not perceive this to present a different issue than that which we

discuss. No other basis is argued for prohibiting the Bank's lawsuit.

to relieve co-debtors of the bankrupt of their liabilities." *Id.* at 595.

*See also R.I.D.C. Industrial Development Fund v. Snyder* (1976) 5th Cir., 539 F.2d 487, *cert. denied* (1977) 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542; *United States ex rel. Small Business Administration v. Kurtz* (1981) D.C. Pa., 525 F.Supp. 734, *aff'd* 688 F.2d 827, *cert. denied* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387; *Beconta, Inc. v. Schneider* (1984) E.D.Mich., 41 B.R. 878; *In re Harvey Cole Co.* (1980) W.D.Wash., 2 B.R. 517; *Rock Hill National Bank v. Honeycutt* (1986) 289 S.C. 98, 344 S.E.2d 875; *Exxon Chemical Americas v. Kennedy* (1982) 59 N.C.App. 90, 295 S.E.2d 770.

We realize that the situation presented here is somewhat unusual in that the debtor and the guarantor are now one and the same. The right of subrogation granted by § 509(a) does not benefit Realty. However, these facts do not alter the result. Realty was a separate corporate entity when it incurred its obligation as guarantor of Financial's debt to the Bank. It was a separate corporate entity when it was sued on its guaranty by the Bank. We are certain that Realty's merger with Financial did not eliminate other obligations previously incurred by Realty as a separate entity. We see no convincing reason why Realty's obligation on its guaranty should be treated differently.

The judgment of the trial court is reversed and the cause is remanded with instructions to enter judgment in favor of the Bank.

SHIELDS, P.J., and CONOVER, J., concur.