**In re Robert Fulwood KIRVEN, d/b/a Pinewood Builders, and Barbara Kirven, Debtors.**

Civ. A. No. 93–74025.

United States Bankruptcy Court, D. South Carolina.

March 10, 1995.

Mark A. Nappier, Myrtle Beach, SC, for Resolution Trust Corp.

S. Jahue Moore, West Columbia, SC, for debtors.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtors' objection to the Proof of Claim filed by the Resolution Trust Corporation ("RTC") in the amount of One Hundred and Sixty Five Thousand, Fifty–Three and 22/100 ($165,053.22) Dollars. The RTC's unsecured claim is based upon a guaranty provided by the Debtors to North Carolina Federal Savings and Loan ("Bank"), the RTC's predecessor, which secured a loan made by the Bank to Pinewood Builders of South Carolina, Inc., by way of a note and mortgage dated November 30, 1988. Upon default, the RTC foreclosed on the mortgaged property and by way of the subject Proof of Claim asserts a claim against the Debtors as guarantors for the amount of the guaranty, less the proceeds received as a result of the foreclosure sale.[1]

The Debtors assert that as guarantors, they are entitled to, and should have been afforded, the protection offered by the South Carolina Appraisal Statute codified at § 29–3–680 of the South Carolina Code of Laws ("Appraisal Statute") because the mortgaged property (which was purchased at the sale by the RTC) has a value greater than that paid by the RTC as evidenced by an appraisal by Anton Poster.

The RTC asserts that the Guaranty provided by the Debtors gives rise to a separate obligation and contract distinct from the Note and Mortgage under which it may bring a claim against the Debtors and that the Debtors were not entitled to the protection offered by the Appraisal Statute since they were not defendants at the time of judgment or sale, to the foreclosure proceeding. Based upon the pleadings, arguments of counsel and the evidence submitted at the hearing, this Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On November 30, 1988, Pinewood Builders of South Carolina, Inc.[2] borrowed $345,685.00 in the form of a Construction Loan from North Carolina Federal Savings and Loan Association ("Bank"). The Construction Loan was evidenced by a Promissory Note ("Note") and secured by a Mortgage & Security Agreement ("Mortgage") dated November 30, 1988 between Pinewood Builders of South Carolina, Inc., as Mortgagor, and the Bank, as Mortgagee, which created a security interest in real estate generally described as 9.98 acres in Socastee, Horry County, South Carolina ("mortgaged premises").

2. The Note was additionally secured by a Guaranty of Payment and Performance ("Guaranty") of November 30, 1988 from the Debtors, Robert and Barbara Kirven, and from J. Theron Floyd, Jr. and Marilyn M. Floyd.

3. Effective March 1, 1990, the Office of Thrift Supervision ("OTS") appointed the RTC as Receiver for North Carolina Federal Savings and Loan Association, and on the same date the OTS authorized the creation of and issued a charter for a new insured depository institution named North Carolina Savings and Loan Association, F.A. The assets of North Carolina Federal Savings and Loan Association were transferred to North Carolina Savings and Loan Association, F.A. On the same date, the OTS appointed the RTC as Conservator for North Carolina Savings

---

1. The original Proof of Claim filed by the RTC was in the amount of Two Hundred Eighty–Seven Thousand, Five Hundred and Five and 28/100 ($287,505.28) Dollars but was reduced after the collateral property was sold at foreclosure sale.

2. Pinewood Builders of South Carolina, Inc. is a separate and distinct entity from the Debtor Robert F. Kirven d/b/a Pinewood Builders.

and Loan Association, F.A. Effective September 21, 1990, the OTS appointed the RTC as sole Receiver for North Carolina Savings and Loan Association, F.A. ("Association"). The RTC as Receiver took possession of the Association and succeeded to all rights, title, powers and privileges of the Association in the property and the Note and Mortgage more particularly described above.

4. The Note and Mortgage were declared to be in default by the RTC on or before July 7, 1993.

5. On July 7, 1993, the RTC filed a Lis Pendens, Summons and Complaint naming Pinewood Builders of South Carolina, Inc., Robert Kirven, Barbara Kirven and others as defendants. The Complaint sought foreclosure of the mortgaged premises, personal judgments and deficiency judgments.

6. On July 13, 1993, the Debtors, Robert and Barbara Kirven, were personally served with the Lis Pendens, Summons and Complaint. The Kirvens failed to answer or otherwise respond as required by the Summons. On August 18, 1993, the RTC filed an Affidavit of Default in the foreclosure proceeding against the Kirvens.

7. The Kirvens filed a voluntary Chapter 7 petition on August 18, 1993 at 4:25 p.m. o'clock.

8. Robert F. Anderson was appointed the Chapter 7 Trustee and subsequently determined that there were assets available for distribution to creditors.

9. The RTC dismissed the Kirvens as defendants to the foreclosure proceeding on November 9, 1993 by Notice of Dismissal without prejudice pursuant to Rule 41(a)(1) of the *South Carolina Rules of Civil Procedure.*

10. Based upon the Guaranty, on December 20, 1993, the RTC filed an unsecured Proof of Claim against the Debtors in the amount of Two Hundred Eighty–Seven Thousand, Five Hundred and Five and 28/100 ($287,505.28) Dollars.

11. By Masters Report and Judgment of Foreclosure and Sale issued by the Honorable John L. Breeden, Jr., Master–In–Equity for Horry County ("State Court"), dated January 10, 1994 and filed January 12, 1994, it was determined that the RTC was due $307,381.87 together with interest under the Note and Mortgage from Pinewood Builders of South Carolina, Inc. and the mortgaged premises were ordered sold at public auction. At the time of said Report and Judgment of Foreclosure and Sale, the Kirvens were not defendants to the foreclosure proceeding.

12. Neither the Kirvens nor any other defendant to the foreclosure proceeding petitioned the Clerk of Court for Horry County, South Carolina for an order of appraisal pursuant to South Carolina Code Ann. § 29–3–680.

13. The mortgaged premises were sold on February 7, 1994 to the RTC as the highest bidder for $122,452.06. By Masters Report on Sale and Disbursement and Final Order and Order for Deficiency Judgment, entered on April 4, 1994, a deficiency judgment was ordered against Pinewood Builders of South Carolina, Inc. At the time of the Final Order and Order for Deficiency Judgment, the Kirvens were not defendants in the foreclosure proceeding.

14. The RTC's Proof of Claim was amended after the foreclosure sale on April 20, 1994 to claim One Hundred and Sixty Five Thousand, Fifty–Three and 22/100 ($165,-053.22) Dollars which represented the amount due under the Guaranty less the proceeds received from the foreclosure sale.

15. The Debtors timely objected to the RTC's Proof of Claim.[3]

### DISCUSSION AND CONCLUSIONS OF LAW

The South Carolina Appraisal Statute provides that "[i]n any real estate foreclosure

---

**3.** 11 U.S.C. § 502(a) states that "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects". A proof of claim or interest is prima facie evidence of the claim or interest. S.Rep. No. 95–989, 95th Cong., 2nd Sess. 62 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

proceeding a defendant against whom a personal judgment be taken or asked, whether he has theretofore appeared in the action or not, may within thirty days after the sale of the mortgaged property apply by verified petition to the clerk of court in which the decree or order of sale was taken for an order of appraisal." S.C.Code, Ann., § 29–3–680.

The Debtors take the position that the Appraisal Statute protects a defendant from a foreclosure sale for an amount which is less than the fair market value of the real estate and which therefore exposes a defendant to personal liability. The Debtors also argue that as guarantors they should have had the protection of the Appraisal Statute once the RTC elected to initiate foreclosure proceedings before suing on the Guaranty.

The RTC takes the position that the Guaranty is a separate and distinct obligation from the Note and Mortgage. The RTC argues that because the Kirvens were dismissed as defendants from the foreclosure proceeding due to their filing of a voluntary Chapter 7 bankruptcy petition and since they were not defendants at the time of the judgment and sale, the Appraisal Statute does not apply to them by its very terms. In the within proceeding, the Debtors raised no factual defenses to the foreclosure proceeding, but relied upon the application of the Appraisal Statute.

The South Carolina Supreme Court has interpreted the Appraisal Statute in three cases which this Court may look for guidance.

In 1991, the South Carolina Supreme Court held that guarantors who were named as defendants in a mortgage foreclosure proceeding and against whom personal judgments were taken in that same action were entitled to the protection of the Appraisal Statute. *Anderson Brothers Bank v. Adams*, 305 S.C. 25, 406 S.E.2d 173 (1991). The Court held that "under the plain and unambiguous terms of the statute, they [defendants/guarantors] were entitled to its benefits." *Anderson*, p. 175.

On August 15, 1994, the South Carolina Supreme Court again held that the determin-

ing factor as to whether a party is entitled to assert the Appraisal Statute is whether that party is a defendant in a real estate foreclosure proceeding and not whether the party is a mortgagor. *Standard Federal Savings Bank v. H & W Builder*, 448 S.E.2d 558 (S.C.1994).

On May 9, 1994, the South Carolina Supreme Court further held that the application of the Appraisal Statute is limited to real estate foreclosure actions and did not apply to protect guarantors in a separate action to recover on a guaranty of payment. *Citizens and Southern National Bank of South Carolina v. Lanford*, 443 S.E.2d 549 (S.C.1994). In *Lanford*, the creditor had a mortgage on real estate as well as a guaranty to secure the note, but because the real estate was property of the estate in a bankruptcy case, the creditor elected to sue on the guaranty rather than initiate a foreclosure proceeding. The South Carolina Supreme Court citing *Rock Hill National Bank v. Honeycutt*, 289 S.C. 98, 344 S.E.2d 875 (Ct.App.1986) and *Peoples Federal S & L v. Myrtle Beach Retirement Group*, 300 S.C. 277, 387 S.E.2d 672 (1989), stressed that a guaranty is separate and distinct from a note under which a creditor may maintain an action immediately upon default of a debtor.

> The undertaking of the former (guaranty) is independent of the promise of the latter (principal obligation); and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral.

*Lanford* at p. 551, citing Am.Jur.2d Guaranty § 4.

Another case which is instructive in the area of the application of the South Carolina Appraisal Statute is the unpublished opinion of the United States District Court for the District of South Carolina in *RTC v. Robinson* (No. 3:91–3102–17, unpub. slip. op.) (D.S.C. March 11, 1992). In *Robinson*, the defendant asserted that because the creditor, also the RTC, had previously (two days before bringing a separate action on a guaranty) initiated a foreclosure proceeding, the RTC could not maintain a separate action based on the guaranty until the conclusion of

the foreclosure proceeding and after the application of the Appraisal Statute process to determine a deficiency judgment. In essence, the defendant asserted that once a foreclosure proceeding is initiated, the application of the Appraisal Statute is a condition precedent to an action on a guaranty. Relying on the 1986 South Carolina Court of Appeals holding in *Rock Hill National Bank v. Honeycutt*, 289 S.C. 98, 344 S.E.2d 875 (Ct.App.1986), the *Robinson* Court held that:

> [A] creditor does not waive its rights under a guaranty by asserting other rights available to it. Although *Honeycutt* is factually distinguishable from the present case, it is clear that RTC's rights under the guaranty have not been waived merely because it filed suit in state court to foreclose on property partially owned by the defendant two days prior to filing suit against the defendant on the personal guaranty.

*Robinson* at 6.

In the *Robinson* opinion, with issues very similar to the issues within, the Court stated that:

> In this case, RTC's claims arise from different instruments, one of which is a mortgage and the other a contract. The parties to the mortgage and the parties to the guaranty are not identical, and the remedies afforded to RTC are different. Finally, there is a distinction between bringing suit for foreclosure of property and bringing suit directly against a party for breach of contract. Although both the mortgage and the guaranty are related to the loan transaction, the court finds, consistent with *1616 Reminc,* [citation omitted] that RTC possesses two separate claims, one arising from the mortgage and one arising from the guaranty contract.

*Robinson* at 8.

The Court in *Robinson* also held that a creditor's right to sue on a guaranty is not dependent upon the foreclosure action or the amount of the deficiency but "[r]ather, the only condition precedent to bringing an action on a guaranty of payment is default on the note, and any rights afforded by the appraisal statutes are waived by a guaranty of payment. *Tri–South Mortgage Investors v. Fountain,* 266 S.C. 141, 221 S.E.2d 861 (1976) [4]." *Robinson* at 4.

In the within proceeding, it is uncontroverted that the RTC's Proof of Claim is based solely upon the Guaranty which by its terms is an absolute guaranty of payment and which is a separate and distinct contract from the Note and Mortgage. In the Guaranty Agreement between the Debtors and the Bank, the guarantors specifically state that it is their intent to be primarily and not secondarily liable for the indebtedness.[5] By filing its Proof of Claim, the RTC is effectively asserting its rights under the Guaranty as it could have in a separate suit based on the Guaranty, had the Debtors not filed a bankruptcy case. At the hearing, the Debtors conceded that the RTC could have separately sued them on the Guaranty prior to foreclosure, but argued that once the RTC named them as defendants in the foreclosure proceeding, the RTC triggered the application of the Appraisal Statute to the Debtors, even as guarantors and even in the context of a Proof of Claim in a bankruptcy case.

Neither party cited precedent which was dispositive of the Debtors' specific argument. It appears to this Court that the ruling in this case must be based upon a consideration

---

**4.** The *Tri–South Mortgage* opinion was overruled in part in 1994 when the South Carolina Supreme Court held that the contractual waiver of appraisal rights was invalid as being against public policy. *Tri–South Mortgage* was overruled to the extent it was inconsistent with this holding. *SCN Mortgage Corp. v. White,* 440 S.E.2d 868 (S.C.1994). The issue of contractual waiver of the Appraisal Statute was not raised by either party in this case and this Court does not believe that the overruling of the *Tri–South Mortgage* opinion would materially effect the decision of the United States District Court in *Robinson.*

**5.** The Guaranty states that "It is the intent of the undersigned to be primarily and not secondarily liable for the indebtedness guaranteed hereunder. The undersigned agree that this Guaranty may be enforced by Lender without the necessity at any time of its resorting to or exhausting any other security or collateral and without the necessity at any time of having recourse to the Note or any of the property covered by the Mortgage or the Loan Documents, either by foreclosure proceedings or otherwise; and the undersigned hereby waive the benefits of all provisions of law for stay or delay of execution or sale of property . . . .".

of the precedents cited above and an interpretation of the plain language of the Appraisal Statute.

Based upon a literal reading of the Appraisal Statute, a party must be a defendant (against whom a personal judgment is asked) in the foreclosure proceeding at the time of the judgment in order to trigger the protection of that statute. In this Court's view, the request for personal judgment must be a part of the foreclosure proceeding and not a part of a separate action based on an absolute guaranty of payment. A holding that the initial inclusion of the Debtors as party defendants in the foreclosure proceeding, no matter the period of time, should trigger the application of the Appraisal Statute goes beyond a sensible reading of the Statute. Under *South Carolina Rules of Civil Procedure,* a defendant can be dismissed by a plaintiff without order of the court under certain circumstances, including those which appear to have existed in this case. The Debtors were not prejudiced by being initially joined as defendants and later dismissed before any appearance by them in the foreclosure proceeding. The dismissal of the Debtors as defendants precluded the RTC from obtaining a personal judgment against them in that action.

It is also uncontroverted that the Debtors were dismissed from the foreclosure proceeding because they filed a voluntary Chapter 7 bankruptcy case, the effect of which was to automatically stay any further action against them. It is reasonable to infer that the Debtors filed such a case to evoke the automatic stay and to obtain a discharge of personal indebtedness including any personal liability to the RTC. It appears that only the unexpected inclusion of postpetition death benefits payable to one of the Debtors as property of the bankruptcy estate caused there to be a possibility of a full dividend to creditors in this Chapter 7 case, and created the need to litigate issues associated with the RTC's Proof of Claim. The Debtors argue that absent the bankruptcy, they would have continued as party defendants in the foreclosure proceeding and therefore would have been entitled to assert the Appraisal Statute for the bankruptcy. The Debtors further argue that it would be inequitable to, in effect, penalize them for the bankruptcy filing by denying them the right to petition for an order of appraisal. This Court notes that there was no evidence that the Debtors petitioned for an order of appraisal nor did they otherwise request relief. It appears to this Court that the Debtors having chosen to voluntarily file the bankruptcy case and to receive the benefits of the automatic stay and discharge and therefore should not be able to bootstrap their way to the rights provided by the Appraisal Statute in a circumstance in which they did not meet the literal requirements of the Statute.

As in the *Robinson* case, the Guaranty reflects the parties' intention to allow the creditor the right to seek payment under the terms of the Guaranty separate and apart from any other claims or remedies available to it. By filing a Proof of Claim against the bankruptcy estate, the RTC effectively asserts its rights under the Guaranty, which right is separate and distinct from its right to foreclose. The Debtors in this case are not entitled to the rights afforded by § 29–3–680 of the South Carolina Code of Laws (1976). For the reasons stated within, it is therefore,

**ORDERED,** that the Debtor's objection to the Proof of Claim filed by the RTC in the amount of One Hundred and Sixty Five Thousand, Fifty–Three and 22/100 ($165,-053.22) Dollars is overruled.

**AND IT IS SO ORDERED.**