(18 Misc. Rep. 127)
### LUMBER EXCHANGE BANK v. MILLER et al.

(Supreme Court, Special Term, Erie County. September 24, 1986.)

**1. MORTGAGORS—PRIORITY—EFFECT OF AGREEMENT.**
One of two notes secured by a third mortgage was transferred to plaintiff. The other note was transferred to defendant E., to whom, also, the mortgage was assigned. Afterwards, the mortgagee in the first and second mortgages took a new mortgage for the aggregate amount due under them, and then discharged the original mortgages, pursuant to an agreement with the mortgagor and E. (the assignee of the third mortgage) that the third mortgage should be postponed to the new mortgage, believing that E. was the only person who had any right under the third mortgage. It was not the intention to surrender priority by the discharge of the first and second mortgages. Plaintiff did not pay anything for the discharge, and took no part in the transaction. *Held*, that the discharge should be set aside, and the lien of the first and second mortgages restored.

**2. EQUITY—MUTUAL MISTAKE—PERSONS NOT PARTIES TO CONTRACT.**
Where the holder of a first and second mortgage took a new mortgage for the aggregate amount due, and discharged the original mortgages pursuant to an agreement with the mortgagor and one E., who was the assignee of the third mortgage, that the lien of the new mortgage should be superior to that of the third mortgage, without knowledge of the fact that part of the debt secured by the third mortgage was owned by one L., the right of the first mortgagee to have the discharges set aside on account of the mistake, so as to restore the priority of his lien as against L., will not be denied on the ground that the mistake was not mutual, since the rule as to mutual mistake applies only where one party to a contract seeks relief against the other.

Action by the Lumber Exchange Bank against George O. Miller and Alice M. Miller, his wife; Albert W. Story, Edward Evans, William McLaren, Alexander C. Kent, Duncan Sinclair, Mary S. Rann, the Wayne Building, Loan & Accumulation Fund Association, J. S. & M. Peckam Co., and the Central Oil Gas Stove Company.

The action was brought to foreclose a mortgage made and executed by the defendant George O. Miller to the defendant Albert W. Story. This mortgage was given to secure the payment of two notes made by the mortgagor, for $500 each, payable to the order of the mortgagee, as is recited in his bond accompanying the mortgage, all of the said instruments bearing date October 1, 1892. Before the notes matured the same were sold and transferred by the said Story, the payee,—one to the plaintiff; and the other to the defendants Evans, McLaren, Kent, Sinclair, and Rann, doing business as bankers under the co-partnership name of Evans, McLaren & Co. The said defendants and the plaintiff remain the owners, respectively. On the 31st day of July, 1893, the said mortgagee and obligee, Albert W. Story, transferred the said bond and mortgage by an instrument in writing to the said defendants Evans, McLaren & Co. After reciting the said mortgage, and giving the time and place of its record, the said assignment stated: "There is unpaid and to become due on said bond and mortgage the sum of $925, being amount of two promissory notes,—one for $475, owned by and payable at the Lumber Exchange Bank; and the other for $450, owned by and payable at Evans, McLaren & Co.'s bank, and all renewals of the same." At the time of the execution and delivery of the said bond and mortgage, there were two mortgages on the said premises, both executed by the said Miller, as mortgagor,— one to the Wayne Building & Loan Association, dated November 14, 1890, and recorded November 19, 1890, for the sum of $1,300; the other to the same mortgagee, dated June 11, 1891, and recorded June 15, 1891, for the sum of $500. Afterwards, by an arrangement between Miller, the mortgagor, and the Wayne Building & Loan Association, and on the 8th day of March, 1894, the said Miller executed another bond and mortgage to the said loan

association, for $1,500, being the amount which the parties then agreed was unpaid on the said two first mortgages executed by the said Miller to the said loan association, postponing the time of payment; the first two mortgages having become payable by the terms thereof. No other or further consideration was paid for the execution of the last mortgage. This mortgage was recorded on the 28th day of March, 1894. While negotiations were pending for the giving of the last-named mortgage, it was arranged and agreed between Evans, McLaren & Co. and the Wayne Building & Loan Association that the Story lien created by the Story mortgage should be postponed and made inferior to the lien created by the said last-described mortgage, and on the 26th day of March, 1894, an instrument in writing was executed by Evans, McLaren & Co., by the terms of which the lien of the Story mortgage was postponed, as stipulated by the parties, and the instrument delivered to the said Wayne Building & Loan Association. It appears that the last-named mortgage to the Wayne Building & Loan Association was acknowledged by Miller on the same day the said agreement was dated. On the 12th day of May, 1894, the Wayne Building & Loan Association executed instruments, discharging the first two mortgages, wherein it was the mortgagee, and the same was placed on record,—one May 18, 1894, and the other April 18, 1894. Other facts and circumstances material to the issue in question are mentioned in the opinion.

Root, Orton, Baldwin & Baldwin, for plaintiff.
Warner & Lindsay and S. M. Sawyer, for defendants.

WOODWARD, J. At the time of the commencement of this action, the plaintiff being the owner of one of the notes made by the mortgagor, Miller, which the mortgage to Story was given to secure the plaintiff, had a perfect lien on the premises, and its right to maintain this action cannot be questioned. The defendant the Wayne Building & Loan Association, by virtue of the several mortgages executed by Miller, the owner of the premises, has also a perfect lien on the premises, and was properly made a party defendant, whether such lien be prior or subsequent to the plaintiff's lien. The only question presented by the pleadings for the court to determine is whether the lien of the Story mortgage, in which the plaintiff has an interest, should be declared a prior or subsequent lien to the defendant's mortgages. By the record, giving effect to all the instruments which have been given in evidence, it appears that the lien of the defendant's mortgages is subsequent. It, however, contends that, upon all the facts and circumstances as disclosed by the evidence, the two mortgages first executed by Miller, which were, before the discharge of the same, prior liens, should on equitable principles be restored to their priority as liens, and the discharges be set aside. The plaintiff disputes this contention, and insists that, upon the whole case, this defendant is not entitled to the relief demanded.

The material facts are not disputed. The plaintiff did not commit any fraud, nor deceive or mislead the defendant the Wayne Building & Loan Association, nor do anything which induced it to execute the discharge of its first mortgages. The plaintiff admits that it did not pay or give any consideration to secure these discharges, that its lien might become first and superior to those of the defendant the loan association. The plaintiff insists, and such I hold to be the fact, that it was ignorant of the negotiations, while they were pending be-

tween the parties, which resulted in the discharge of the mortgages and the execution of the agreement by Evans, McLaren & Co. postponing the lien of the Story mortgage, and giving priority to the $1,500 mortgage, the one last executed, to the defendant the Wayne Building & Loan Association. The plaintiff takes the further position that the building and loan association had knowledge of the existence of the Story mortgage when it executed the discharges, and also that Evans, McLaren & Co. had no power or authority to displace or postpone the lien created by the Story mortgage, while the note owned by it and secured by that mortgage remained unpaid. I fully concur in the facts and in the law as stated in this proposition. To restate, as I comprehend, the plaintiff's position, it is this: Although it was not a party to the negotiations which led to the discharge of the mortgages, and was wholly ignorant of the facts until after it was accomplished, the plaintiff may take advantage of the circumstances, and realize the benefits resulting to it therefrom, and this court, under its jurisdiction as a court of equity, cannot, on the admitted fact, restore the lien created by the defendant's first mortgages. It is satisfactorily established that the defendant the Wayne Building & Loan Association, in taking the last mortgage from Miller for the sum due and unpaid on its prior mortgages, did not intend to surrender priority of its lien over the Story mortgage, and to prevent that the agreement of the assignees of that mortgage, Evans, McLaren & Co., to postpone and make inferior that lien, was executed. It is also established to my satisfaction that the agents and attorneys for the loan association believed that, by force of that instrument, it continued to have a lien on the premises prior to the Story mortgage. When Evans, McLaren & Co., who were the assignees of the Story mortgage, assented to the postponement, they and the defendant the loan association both believed that the former possessed full power and authority to execute the instrument postponing the lien.

The doctrine invoked in this case by the plaintiff, that equity will not grant relief where the mistake is one of law, applies only where the mistake is simply one of law, and the party had full knowledge of all the material facts and circumstances. Haviland v. Willets, 141 N. Y. 50, 35 N. E. 958; Vanderbeck v. City of Rochester, 122 N. Y. 285, 25 N. E. 408. The agents and attorneys for the Wayne Building & Loan Association did not know, when the second mortgage was taken, that Evans, McLaren & Co. did not possess full power and authority to execute the instrument postponing the lien of the Story mortgage. McLaren, who executed the agreement to postpone, was a member of that firm, and at the time was its business manager. The assignment of the Story mortgage was in form to that firm as assignee, although it recited the fact that the plaintiff held one of the notes which the assignment was intended to secure, and this made the assignees trustee to the bank to the extent of its interests. The search presented to the loan association, when it consented to extend the time for the payment of its loans to Miller and to take another mortgage, did not disclose the fact that the plaintiff had an interest in the Story mortgage. On the contrary, it appeared from the ab-

stract of title that Evans, McLaren & Co. were the sole owners thereof. It thus seems very clear that, when the discharges were executed, the loan association was not advised of the plaintiff's interest in the Story mortgage. It is not to be believed that the second mortgage would have been taken, and the prior mortgages discharged, if that association had been informed that the plaintiff had an interest in the Story mortgage, without its consent being procured, that the lien created by that instrument might be postponed and made inferior to the defendants' last mortgage. In view of all the facts the plaintiff has not made a case which entitles it to maintain its claim for priority of lien. It parted with nothing of value to bring about the discharge of the first mortgage to the Wayne Building & Loan Association.

A sense of fairness and justice prompts the judicial mind to grant the defendant the relief demanded. It is a familiar doctrine, repeatedly asserted by many tribunals, that a court of equity will keep an incumbrance alive or consider it extinguished as will best serve the purposes of justice. Barnes v. Camack, 1 Barb. 396. The principle which underlies all the reported decisions in this class of cases is, when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other parties. In Miller v. Wack, 1 N. J. Eq. 204, the chancellor held that:

"The simple cancellation of a mortgage on the record was not an absolute bar, unless there had been actual satisfaction. The canceling is evidence sufficient to sustain all the rights of persons interested, unless the parties setting up the canceled mortgage should show satisfactorily some accident, fraud, or mistake."

See, also, Campbell v. Trotter, 100 Ill. 281; Bruse v. Nelson, 35 Iowa, 157; Weaver v. Edwards, 39 Hun, 233; Dickerson v. Tillinghast, 4 Paige, 221; Padgett v. Lawrence, 10 Paige, 170; Millspaugh v. McBride, 7 Paige, 509.

The evidence establishes the fact that the defendants' agents and attorneys who conducted the negotiations believed, and were fully justified in believing, that Evans, McLaren & Co. had the right to postpone the Story mortgage. It is incredible that a party having the first mortgage lien on property would cancel it and take a new mortgage thereon for the same debt, postponing the time of payment, without there was an arrangement with the other interested parties that it should continue to be a lien prior to subsequent existing incumbrances. It is not established that the defendant knew, as a matter of fact, that the plaintiff had an interest in the Story mortgage. The fact may be established by fair implication that the defendant believed that Evans, McLaren & Co. were the sole owners of the Story mortgage, and thus establish that there was a mistake as to a material fact, upon which the first mortgagee acted in executing the discharges. Hyde v. Tanner, 1 Barb. 75.

The rule that the mistake must be mutual in order to relieve one of the contracting parties from the legal effect of its agreement has no application to this case. The plaintiff was not a party to the re-

lease, nor did it participate in the preliminary negotiations. The plaintiff was ignorant of the transactions, as it claims, and it is so admitted by all the interested parties, until after the discharges were executed and the defendants' new mortgage taken. The discharges of the first two mortgages should be canceled, and the liens created thereby restored, and the amount due thereon be fixed and determined in the judgment, so that, on the sale, interested parties may know the amount due thereon.

The parties agree there was due on two first mortgages $1,500 on the day the last mortgage was dated, which sum, with interest thereon from that day, will fix the amount now due. I am unable to determine from the data before me the portion due on those mortgages, respectively, and if the parties cannot agree how this sum should be distributed, they may appear before me for a hearing on this question. The plaintiff is entitled to the usual decree of foreclosure, with costs, and the sum realized on the sale should be divided between the plaintiff and the defendants Evans, McLaren & Co., based upon the notes held by those parties, respectively, which, upon the note held by the plaintiff on the 14th day of May, 1894, amounted to $450, and on the note held by Evans, McLaren & Co., dated July 5, 1893, was $450 less the indorsements thereon of $10. The plaintiff is entitled to judgment for any deficiency against the defendant Story.