543 S.E.2d 241

**FIRST PALMETTO SAVINGS BANK, F.S.B., Appellant,**

v.

**Pradipkumar I. PATEL, and Branch Banking & Trust Company of South Carolina ("BB & T") and Bhupendra G. Patel, Defendants,**

**of Whom Branch Banking and Trust Company of South Carolina ("BB & T") and Bhupendra R. Patel are, Respondents.**

No. 3286.

Court of Appeals of South Carolina.

Submitted Dec. 11, 2000.

Decided Jan. 16, 2001.

Rehearing Denied March 12, 2001.

180

Thomas E. Player, Jr., Player & McMillian, J. Kennedy DuBose, Jr., DuBose & Cushman, Camden, for appellant.

James O. Spence, Dooley, Dooley & Spence, Lexington, B. Michael Brackett, Rogers, Townsend & Thomas, Columbia, for respondents.

GOOLSBY, Judge:

In this foreclosure action the master-in-equity set aside the satisfaction of a mortgage held by Bhupendra Patel, restoring it to first priority, and granted foreclosure. First Palmetto Savings Bank appeals. We reverse and remand.[1]

### FACTUAL/PROCEDURAL BACKGROUND

On May 1, 1989, Bhupendra Patel sold the Sumter Tourist Lodge (the Property) to Nagarbhai K. Patel.[2] In consideration, Nagarbhai executed a promissory note in favor of Bhupendra in the amount of $260,000.00, secured by a wraparound mortgage on the Property. The wrap mortgage was subordinate to a mortgage given by Bhupendra to Fred and E.W. Gee. Nagarbhai subsequently sold the Property to his son, Pradipkumar Patel. With Bhupendra's consent, Pradipkumar assumed payments on the note and the wrap mortgage Nagarbhai had given to Bhupendra.

On February 24, 1988, Bhupendra borrowed $100,000.00 from the National Bank of South Carolina (NBSC). As security for the loan, Bhupendra executed and delivered to NBSC a promissory note together with a subordination and collateral assignment of the wrap mortgage. To further secure the debt, Pradipkumar, then the owner of the Property, executed a real estate mortgage conveying a lien to NBSC.

Ken Hamilton served as the closing attorney for Bhupendra, as borrower, and NBSC, as lender. Hamilton witnessed the execution of the subordination and collateral assignment of the wrap mortgage and recorded the document in the public records. Following this transaction, the first mortgage lien on the Property was held by Fred and E.W. Gee; the second, by NBSC pursuant to the mortgage executed by Pradipkumar;

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. Bhupendra Patel and Nagarbhai Patel are not related.

and the third, by Bhupendra, subject to the subordination and collateral assignment to NBSC.

In January 1994, Bhupendra satisfied the obligation to Fred and E.W. Gee. That mortgage was subsequently marked paid and cancelled of record. Bhupendra also repaid the loan from NBSC, satisfying the mortgage given by Pradipkumar to secure the debt. Bhupendra, however, neglected to contact NBSC concerning the reassignment of the wrap mortgage he had assigned as collateral. Following the January 1994, repayments, the wrap mortgage from Nagarbhai to Bhupendra was the first and senior lien on the Property.

In March 1996, Pradipkumar arranged to receive a loan from First Palmetto Savings Bank (First Palmetto). As security for the loan, First Palmetto required a primary lien on the Property. Ken Hamilton served as the closing attorney for the transaction. Hamilton's title search revealed the outstanding wrap mortgage from Nagarbhai to Bhupendra, which had been assigned to NBSC. Hamilton contacted NBSC and requested that it determine the status of the mortgage, which Pradipkumar asserted had been satisfied some time earlier. Neither Hamilton nor NBSC discovered that it was a collateral rather than absolute assignment.

On April 30, 1996, without the knowledge or consent of Bhupendra, an officer of NBSC executed a Satisfaction of Lost or Destroyed Mortgage declaring the wrap mortgage paid in full and authorizing the Register of Mesne Conveyances to cancel it from the records.[3] Pradipkumar refinanced the mortgage with a loan of $200,000.00 from First Palmetto in October 1996. Hamilton again served as the closing attorney.

In February 1998, First Palmetto brought a foreclosure action against Pradipkumar, asserting its mortgage was the primary lien on the Property. Bhupendra filed an answer in the action and asserted counterclaims and crossclaims to set aside NBSC's mistaken satisfaction of the wrap mortgage, restore it to first priority, and foreclose.

---

**3.** Bhupendra became aware that his mortgage had been wrongly satisfied in 1997 when he applied for a loan from Branch Banking & Trust Company of South Carolina (BB & T) intending to use the mortgage as collateral. NBSC admitted at trial that it did not have the authority to satisfy the mortgage.

The action was referred to the master-in-equity for final judgment with any appeal to be directly to the South Carolina Supreme Court. The master concluded:

> [A]ttorney Hamilton was attorney and agent for [First Palmetto] and ... had knowledge of the true facts regarding the nature of Bhupendra Patel's subordination and assignment of mortgage from the former transaction, or obtained sufficient knowledge of facts during the course of the second and third loan closing transactions to have placed him on inquiry notice to further investigate the nature of the assignment. Therefore, attorney Hamilton's knowledge is imputed to [First Palmetto] and [First Palmetto] is not an innocent third party who would be prejudiced by the restoration of Defendant Bhupendra Patel's mortgage to its rightful priority.

The master then canceled the mistaken satisfaction, restored and reinstated Bhupendra's wrap mortgage to first priority, and granted foreclosure. The master also found that Bhupendra's failure to seek re-assignment of the wrap mortgage was not the proximate cause of the mistaken satisfaction. This appeal followed.

## LAW/ANALYSIS

■ An action to foreclose a real estate mortgage is one in equity.[4] As such, this court may find facts in accordance with its own view of the preponderance of the evidence.[5]

■ First Palmetto initially argues the master erred in imputing to it knowledge obtained by Hamilton in the February, 1988 loan closing concerning the collateral nature of the wrap mortgage. We agree.

■ Equitable principles may be applied to cancel a mortgage satisfaction.[6] Specifically, " 'when the legal rights of the parties have been changed by mistake, equity restores

---

4. *Dockside Ass'n v. Detyens,* 294 S.C. 86, 362 S.E.2d 874 (1987); *MI Co. v. McLean,* 325 S.C. 616, 482 S.E.2d 597 (Ct.App.1997).

5. *Townes Associates, Ltd. v. Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

6. *MI Co.,* 325 S.C. at 624, 482 S.E.2d at 601.

them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other parties.' " [7]    Thus, a mortgage that has been mistakenly satisfied may be reinstated only where there is no third party who, without notice of the mistake, subsequently and in good faith acquires an interest in the property.[8]

The master found that as a result of Hamilton's involvement in the February, 1988 loan closing he obtained knowledge of the true collateral nature of the assignment.  The master then found that this knowledge was imputed to First Palmetto as a result of the principal-agent relationship formed in March, 1996.

■    Generally a principal is charged with the knowledge an agent acquired prior to the formation of the agency only when it is clearly shown that the knowledge was in the mind of the agent while acting for the principal *or* where he acquired it so recently as to raise the presumption he still retained it in his mind.[9]    Because Hamilton's representation of First Palmetto occurred eight years after his participation in the 1988 transaction, any presumption of retention must fail.  Accordingly, any knowledge that Hamilton may have acquired in 1988 cannot be imputed to First Palmetto unless it is clearly shown that the information was in Hamilton's mind while he served as First Palmetto's agent.

Hamilton testified that he remembered little of the 1988 transaction.  His file concerning the transaction was listed under Pradipkumar's name rather than Bhupendra's.  Although the subordination and assignment agreement was stamped with Hamilton's address, he could not remember if he

---

7. *Young v. Pitts*, 155 S.C. 414, 420, 152 S.E. 640, 642 (1930) (quoting *Lumber Exchange Bank v. Miller*, 18 Misc. 127, 40 N.Y.S. 1073 (N.Y.Sup.Ct.1896)).

8. *MI Co.*, 325 S.C. at 624, 482 S.E.2d at 602.

9. *Aiken Petroleum Co. v. National Petroleum Underwriters, etc.*, 207 S.C. 236, 36 S.E.2d 380 (1945); *Pee Dee State Bank v. Prosser*, 295 S.C. 229, 367 S.E.2d 708 (Ct.App.1988), *overruled in part on other grounds, United Carolina Bank v. Caroprop, Ltd.*, 316 S.C. 1, 446 S.E.2d 415 (1994).

had prepared it. When asked on cross examination whether he believed that the assignment was absolute when he contacted NBSC, Hamilton responded: "I do not know. All I know is that N.B.S.C. held the mortgage at that time, because that is what the public records indicate and that is why we asked N.B.S.C. to assign estoppel." Hamilton later stated: "The only thing that I apparently concerned myself [sic] or my office did was the fact that N.B.S.C. held an Assignment of Mortgage and that N.B.S.C. would have to do a satisfaction."

Hamilton admitted that when checking the public record for his title opinion in 1996, he would have discovered that he had been involved with the subordination and assignment agreement. He further testified that when he was preparing for the 1996 closing between Pradipkumar and First Palmetto, he would have probably recognized the name and may have checked the 1988 file to see the identity of the parties and the property involved. He stated, however, that he doubted he would have checked the file specifically with the wrap mortgage in mind. He explained that it would have been highly unlikely for him to remember the details of the 1988 transaction when he closed the loans for First Palmetto.

We find no evidence that at the time of the 1996 closings Hamilton had present in his mind the knowledge that the assignment of the wrap mortgage was collateral rather than absolute. Additionally, we find no evidence from the document itself that would have or should have brought the details of the 1988 transaction to the forefront of Hamilton's mind. The subordination and collateral assignment agreement appears on its face to be an absolute assignment of the mortgage. The agreement contains no language that the mortgage would be reassigned upon payment of debts owed to NBSC. Although Hamilton may have remembered that he had been involved with the recording of the subordination and assignment agreement, he denied checking his 1988 file with the wrap mortgage in mind. We find nothing so peculiar about the subordination and assignment agreement that would have mandated Hamilton check his 1988 file before proceeding with the 1996 closing. We, therefore, hold that the master erred in imputing knowledge of the collateral nature of the assignment to First Palmetto.

Accordingly, we reverse the cancellation of the mortgage satisfaction and the reinstatement of the wrap mortgage to first priority.[10] We remand the case for foreclosure of the mortgages in accordance with this opinion.

**REVERSED AND REMANDED.**

CURETON and CONNOR, JJ., concur.

---

10. Because we reverse on this issue, we need not reach First Palmetto's remaining arguments.