559 S.E.2d 342

**ALLENDALE COUNTY BANK, Respondent,**

v.

**George W. CADLE, Peerless Group, Inc., JEJ Construction, Inc., Red Earth Environmental, Inc., Steffen Robertson and Kirsten (U.S.), Inc., E & J Landscaping, Inc. and Wastemasters of South Carolina, Inc., Defendants,**

**Of whom Steffen Robertson and Kirsten (U.S.), Inc. and E & J Landscaping, Inc. are, Appellants.**

**No. 3422.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2001.

Decided Dec. 17, 2001.

Rehearing Denied Feb. 20, 2002.

Gary H. Smith, III, of Braithwaite, Smith, Massey & Brodie, of Aiken; and Ladson H. Beach, Jr., of Orangeburg, for appellants.

Walter H. Sanders, Jr., of Fairfax, for respondent.

CURETON, J.:

Allendale County Bank ("Bank") brought this action to establish the priority of its mortgage on real estate located in Allendale County after it mistakenly filed a satisfaction of the mortgage. The special referee cancelled the mortgage satisfaction and concluded Bank had a first lien on the property, with priority over Steffen Robertson and Kirsten (U.S.), Inc. ("SRK") and E & J Landscaping, Inc. ("E & J"). Both SRK and E & J (collectively, "Appellants") appeal. We affirm.

## FACTS

This action arises out of a dispute regarding the priority of lienholders on real estate owned by George W. Cadle. The property consisted of approximately five tracts of land with a total of more than 340 acres in Allendale County. Cadle operated the Appleton Sanitary Landfill on a portion of the land that is now known as the Wastemasters of South Carolina, Inc. Landfill.

Cadle had been doing business with Bank for a number of years. He executed three mortgages on his property in favor of Bank in 1982, 1987, and 1989.

In 1993, Cadle executed a fourth mortgage on his property in favor of Bank and a 10–year promissory note for $390,000. The mortgage, dated September 17, 1993, was recorded in the Office of the Clerk of Court for Allendale County at Book 82, Page 535. According to the parties, the fourth mortgage was actually a consolidation of the three prior mortgages.

In 1996, Cadle contracted to sell to Wastemasters of South Carolina, Inc. approximately 306 acres comprising what was formerly the Appleton Sanitary Landfill.

As part of the ongoing arrangements in the sale to Wastemasters, Cadle wished to extinguish the first three mortgages on the property executed in 1982, 1987, and 1989. However,

Cadle's attorney prepared four Satisfactions of Mortgage for execution by Bank. On June 10, 1996, three separate Satisfactions of Mortgage were filed in the Allendale County Clerk's Office for the mortgages executed in 1982, 1987, and 1989. In addition, however, a fourth Satisfaction of Mortgage was recorded purporting to satisfy a mortgage from Cadle to Bank dated September 17, 1983 and was recorded in Mortgage Book 82, Page 535. As a result, the 1993 mortgage was marked as satisfied of record despite the fact that the Satisfaction of Mortgage form contained a typographical error stating the mortgage date was September 17, 1983 instead of 1993.

In 1997, Appellants filed mechanics' liens in the Allendale County Clerk's Office, claiming nonpayment for materials and/or services they had provided to Wastemasters for improvements to the real property (landfill) owned by Cadle.[1] SRK filed an amended mechanic's lien with the clerk's office seeking the sum of $135,822.07 on June 25, 1997. E & J filed its mechanic's lien against the property for the amount of $341,243.60 on May 12, 1997.

The problem in this case arose when Bank realized it had mistakenly marked the fourth mortgage, executed in 1993, as satisfied when only the first three mortgages should have been satisfied. After Bank realized its mistake, Cadle executed a new mortgage in favor of Bank on the same property described in the original mortgages. It was recorded in the clerk's office on December 23, 1997.

In October 1998, Bank filed this mortgage foreclosure action, asserting Cadle had executed a note with an unpaid balance due of $277,741.15, plus interest, attorney's fees, and costs, which was secured by a 1993 mortgage that was "rerecorded" in 1997.[2] Bank asked that its mortgage be foreclos-

---

1. The evidence contained in the record shows that E & J began its work for Wastemasters on the landfill in August or September 1995. SRK entered into a contract with Wastemasters on or about December 8, 1995 to furnish services for the landfill.

2. The complaint states the 1993 mortgage secured a note executed by Cadle on February 23, 1998, and the note was attached to the complaint. According to the referee's order, the 1998 note was a renewal of the prior note made after Bank reinstated its mortgage in 1997.

ed and declared a first lien on the property, with the liens of the Appellants designated junior to its mortgage.

Appellants SRK and E & J each answered and asserted their liens were superior to Bank's. In November 1999, the matter was referred to a special referee to enter a final order with direct appeal to this court.

The referee found Bank's 1993 mortgage was satisfied by mistake and that neither of the Appellants had relied on Bank's satisfaction of the mortgage in providing improvements to the property. The referee concluded that, as a matter of equity, Bank's mortgage should be reinstated as a first lien on the property with Appellants' mechanics' liens being junior in priority to Bank's lien. Appellants appeal, asserting Bank's mortgage was not entitled to priority over their mechanics' liens.[3]

## STANDARD OF REVIEW

An action to foreclose a real estate mortgage and for cancellation of a mortgage satisfaction on the basis of mistake lies in equity. *First Palmetto Sav. Bank v. Patel*, 344 S.C. 179, 183, 543 S.E.2d 241, 243 (Ct.App.2001). Thus, this Court has jurisdiction to determine the facts in accordance with our own view of the preponderance of the evidence. *Id.; see also Dockside Ass'n v. Detyens*, 294 S.C. 86, 88, 362 S.E.2d 874, 875 (1987) ("An action to foreclose a real estate mortgage is one in equity. In equity cases, we may find facts in accordance with our own view of the evidence.").

## LAW/ANALYSIS

### I. Priority of Bank's Mortgage

Appellants first contend the referee erred in ruling they were not entitled to priority as they were first to file their liens pursuant to Section 30–7–10 of the South Carolina Code. We find no error.

Section 30–7–10 provides in relevant part as follows:

All deeds of conveyance of lands, ... all mortgages ... of any real property, ... all statutory liens on buildings and

---

3. The remaining defendants are not parties to this appeal.

lands for materials or labor furnished on them, . . . are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property is situated. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent convey-ance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.

S.C.Code Ann. § 30–7–10 (Supp.2000).

■ Section 30–7–10 sets forth the general rule for priority under the law. However, Bank is asserting equitable grounds for relief from strict application of the general rule. Accord-ingly, we agree with the referee that section 30–7–10 is not determinative of the parties' rights in this instance.

■ As this Court recently reiterated: "Equitable princi-ples may be applied to cancel a mortgage satisfaction." *First Palmetto Sav. Bank,* 344 S.C. at 183, 543 S.E.2d at 243. This rule has long been recognized in South Carolina:

The principle which underlies all of the reported decisions in this class of cases is, when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfer-ing with any new rights acquired on the faith and strength of the altered condition of the legal rights and without doing injustice to other parties.

*Young v. Pitts,* 155 S.C. 414, 420, 152 S.E. 640, 642 (1930) (quoting *Lumber Exch. Bank v. Miller,* 18 Misc. 127, 40 N.Y.S. 1073 (N.Y.Sup.Ct.1896)). "Thus, a mortgage that has been mistakenly satisfied may be reinstated only where there is no third party who, without notice of the mistake, subse-quently and in good faith acquires an interest in the property." *First Palmetto Sav. Bank,* 344 S.C. at 184, 543 S.E.2d at 243; *see also Young,* 155 S.C. at 420, 152 S.E. at 642 ("[A] satisfac-

tion entered through mistake does not destroy the priority of the mortgage unless others are misled and injured thereby.").

At the hearing in the case before us, John Harter, president of Bank, testified he understood Cadle's property was being purchased and that the buyer had requested Cadle to satisfy all old mortgages of record. Harter testified the September 17, 1993 mortgage was a consolidation of the prior mortgages and that he was not authorized, nor did he intend, to satisfy the September 17, 1993 mortgage, as the note securing this mortgage had not been paid. Harter further stated Cadle's attorney prepared and presented to him four Satisfaction of Mortgage forms purporting to satisfy mortgages from 1982, 1983, 1987, and 1989. After examining the satisfaction forms and finding none of them purported to satisfy a mortgage from the 1990s, Harter executed the forms which were then recorded by Cadle's attorney.

Harter stated if any of the mortgage satisfaction forms had been dated 1993, he never would have signed them. Harter acknowledged he did not personally check Bank's vault to see how many old mortgages Bank held, but he knew the most recent mortgage was exectued in the 1990s when he started working at Bank, and that all of the satisfaction forms he was signing were for mortgages dated in the 1980s.

The only witness to testify for the Appellants, Ed Salisbury, president of E & J, stated that his firm started working for Wastemasters on the landfill on Cadle's property around August or September of 1995. Further, Salisbury expressly acknowledged the presence or absence of a mortgage would not have affected his work on the property.

■ We agree with the special referee's findings that Bank's satisfaction of the 1993 mortgage was by mistake and that Appellants have failed to show any detrimental reliance or prejudice resulting from the mistaken filing of the satisfaction. E & J's and SRK's interests were created in the Wastemasters's landfill at the time the labor was performed or the material furnished. *See Shelley Constr. Co. v. Sea Garden Homes, Inc.*, 287 S.C. 24, 26, 336 S.E.2d 488, 489 (Ct.App. 1985) (Inchoate liens arise for debt due for labor performed or materials furnished when labor is performed or materials furnished.); *Charleston Lumber Co. v. GPT*, 303 S.C. 350, 353,

400 S.E.2d 508, 510 (Ct.App.1991) (Mechanic's lien arises, inchoate, when labor is performed or material furnished, but to be valid it must be perfected and enforced in accordance with Mechanic's Lien statutes). Although Appellants did perform work on the property, there is no evidence that either of them performed a check of the title to the property prior to undertaking to do any work on the premises. Since none of the mortgage satisfactions were filed until June 1996 and the 1993 mortgage was still of record at the time Appellants obtained liens on the property, there could have been no reliance on the mistaken satisfaction prior to furnishing labor or materials to improve the property.

�In SRK argued for the first time at oral argument before this court that its reliance argument is based on the status of the record at the time it filed the mechanic's lien action, since there was no mortgage on record at this time. SRK contends it would not have expended the money to prosecute this action if it was aware that the 1993 mortgage was still on record. We find this issue is not preserved for our review because the trial judge never ruled on the issue. An issue not raised to or ruled on by the trial court is not preserved for appellate review. *Schofield v. Richland County Sch. Dist.*, 316 S.C. 78, 82, 447 S.E.2d 189, 191 (1994).

▮ However, even if this issue were preserved, a review of the case law provides no support for this argument since the issue of reliance on the mistaken satisfaction is viewed at the time the interest is created in the property. In this case, the interest was created in the property at the time the material or labor was furnished. *See Maxwell v. Epton,* 177 S.C. 184, 181 S.E. 16 (1935); *Young v. Pitts,* 155 S.C. 414, 152 S.E. 640 (1930); *First Palmetto Sav. Bank v. Patel,* 344 S.C. 179, 543 S.E.2d 241 (Ct.App.2001); *MI Co. v. McLean,* 325 S.C. 616, 482 S.E.2d 597 (Ct.App.1997).

Consequently, we affirm the referee's determination that Bank's 1993 mortgage should be reinstated with priority over any claims held by the Appellants. *See Young,* 155 S.C. at 420, 152 S.E. at 642 (stating where the satisfaction of a mortgage is "entered through mistake, the law regards it as never having been entered at all, unless entering the satisfac-

tion brought about prejudice to others dealing with the property").

## II. Effect of Bank's Negligence

 Appellants next argue the referee erred in ruling Bank could assert its priority despite Bank's own negligence in causing the release of the 1993 mortgage. We disagree.

Appellants contend Bank's failure to investigate the accuracy of the documents signed by Bank's president was negligent. Appellants cite *MI Co. v. McLean,* 325 S.C. 616, 482 S.E.2d 597 (Ct.App.1997), for the proposition that a mortgagee's negligence in the unintended release of a mortgage renders it ineligible to seek reinstatement of the instrument. Based on their assertion that negligence is a bar to equitable relief, Appellants maintain the priority of Bank's mortgage should be calculated from the time the 1997 mortgage was filed, thus rendering Bank's mortgage lien junior to their liens.

Appellants specifically quote the following language from *MI Co.,* in support of their arguments:

> [W]here the mortgage cancellation is attributable to the mortgagee who ... *makes the fraud possible through his negligence,* the court will not interfere to protect the mortgagee *at the expense of the innocent person deceived by the fraud.* In the equitable principle involved, use of the concept "negligence" refers to lax conduct on the part of one innocent party, but for which the other innocent party would have been protected from the deceit.

*Id.* at 624–25, 482 S.E.2d at 602 (citation omitted) (emphasis added).

Contrary to Appellants' assertion, the negligence of the mortgagee does not automatically result in denial of equitable relief. Rather, the test is whether there has been reliance by an innocent third party on the mistaken satisfaction. *See, e.g., Young,* 155 S.C. at 420–21, 152 S.E. at 642 (referencing cases holding that "where the holder of a note secured by a mortgage, by his own fault caused the satisfaction of the mortgage of record, he was, nevertheless, entitled to have the mortgage reinstated as against the mortgagor and subsequent creditors, who had no knowledge of the release and were not induced thereby to extend credit on the faith of the real estate being

unencumbered.") (citing *Stanley v. Valentine,* 79 Ill. 544 (1875) and *McConnell v. Bank,* 59 Ind.App. 319, 103 N.E. 809 (1914)).

We find that Appellants are unable to establish their reliance upon Bank's mistaken satisfaction. We note that the only witness to testify on behalf of Appellants stated there was no reliance on the records in Allendale County before performing work at the landfill, and his work was unaffected by whether or not a mortgage existed on the property. Accordingly, we find any negligence on the part of Bank did not irrevocably destroy its entitlement to equitable relief.

## III. Bank's Alleged Misconduct

Appellants finally contend the referee erred in ignoring Bank's inequitable conduct in this matter. Appellants assert that, since Bank is seeking relief in equity, its conduct is subject to equitable principles and Bank is not entitled to priority of its mortgage. We find no error.

Appellants contend the problem with the mortgages arose in this case only because Bank failed in 1993 to release the three existing mortgages that were being consolidated into the 1993 instrument. They assert Bank's failure to do so was not the result of mistake or negligence. Rather, it was "a calculated decision by Bank that contributed to a commission of fraud and deceit by Mr. Cadle upon his creditors."

Bank's chairman, Walker R. Harter, admitted during his testimony that Bank was aware Cadle wanted to leave the three superseded mortgages in place, apparently because he had some outstanding judgments and he wanted his creditors to believe they were further down the priority chain than they really were. According to Harter, Bank accommodated Cadle because he was a long-term customer.

We find the issue is not preserved for our review. Initially, we note Appellants failed to plead the doctrine of "unclean hands" as an affirmative defense in their answers. *See Rock Hill Nat'l Bank v. Honeycutt,* 289 S.C. 98, 104, 344 S.E.2d 875, 879 (Ct.App.1986) (Because the theory of unclean hands was not pled or raised to trial judge it could not be raised on appeal.); *see also Dye v. Gainey,* 320 S.C. 65, 70, 463 S.E.2d 97, 100 (Ct.App.1995) (Goolsby, J., concurring and dissenting) ("The majority in a footnote discounts Dye's failure

to appeal the trial court's reliance on the doctrine of unclean hands, implying this reliance was improper because Gainey had not yet filed a responsive pleading and never raised the doctrine as an affirmative defense."); *see also* Rule 8(c), SCRCP (requiring "any other matter constituting an avoidance" to be pled affirmatively).

In addition, the referee did not specifically rule on this allegation in his detailed order and there is no indication it was raised in a motion to alter or amend the judgment. Although there was some testimony at trial regarding Bank's motivation for allowing the three prior mortgages to remain on the record after the fourth mortgage was recorded in 1993, we can find no specific assertion by Appellants that Bank should not be allowed to have priority on the basis of "unclean hands," as it now asserts on appeal. *See Holy Loch Distribs. v. Hitchcock,* 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000) ("In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court."); *First Union Nat'l Bank v. Hitman, Inc.,* 306 S.C. 327, 331 n. 5, 411 S.E.2d 681, 683 n. 5 (Ct.App.1991) (noting Hitman's "unclean hands" defense that the bank had acted inequitably in conducting a sale was not preserved where Hitman never objected to the sale on this basis and "did not make this specific defensive argument to the trial judge although its witnesses did complain about the delay[,] the trial judge did not rule on it[,] and Hitman did not file a post-trial motion to obtain a ruling").

In any event, even assuming Appellants' argument concerning Bank's inequitable conduct were preserved, Appellants are unable to demonstrate any prejudice in this regard. The only defense witness to testify, Ed Salisbury, the president of E & J, testified that he did not rely on the presence or absence of the mortgages in deciding whether to render services and/or materials which were the basis for his company's mechanic's lien. *See Wilson v. Landstrom,* 281 S.C. 260, 267, 315 S.E.2d 130, 134 (Ct.App.1984) ("Since prejudice to the defendant is a necessary element of the 'unclean hands' defense, the doctrine cannot bar relief on the facts before us."). Accordingly, we find this argument affords no basis for reversal.

## CONCLUSION

For the foregoing reasons, the decision of the referee is **AFFIRMED.**

STILWELL and SHULER, JJ., concur.